1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALENTINO LUAFALEMANA, | ) 1:10-cv—00150-SKO-HC |
| | ) |
| Petitioner, | ) ORDER SUBSTITUTING CYNTIA Y. |
| | ) TAMPKINS AS RESPONDENT |
| | ) |
| v. | ) ORDER DENYING THE PETITION FOR |
| | ) WRIT OF HABEAS CORPUS (DOC. 1) |
| CYNTHIA Y. TAMPKINS, Warden, | ) AND DIRECTING THE CLERK TO ENTER |
| | ) JUDGMENT FOR RESPONDENT |
| Respondent. | ) |
| | ) ORDER DECLINING TO ISSUE A |
| | ) CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting consent in signed writings filed by Petitioner on February 12, 2010 (doc. 3), and filed on behalf of Respondent on December 27, 2010 (doc. 9).  Pending before the Court is the petition filed on February 1, 2010.  Respondent filed an answer and supporting documentation on March 23, 2011; Petitioner filed a traverse on August 10, 2011.

1        I.   <u>Subject Matter Jurisdiction</u>

2        Because the petition was filed after April 24, 1996, the

3   effective date of the Antiterrorism and Effective Death Penalty

4   Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  <u>Lindh</u>

5   <u>v. Murphy</u>, 521 U.S. 320, 327 (1997); <u>Furman v. Wood</u>, 190 F.3d

6   1002, 1004 (9th Cir. 1999).

7        A district court may entertain a petition for a writ of

8   habeas corpus by a person in custody pursuant to the judgment of

9   a state court only on the ground that the custody is in violation

10  of the Constitution, laws, or treaties of the United States.  28

11  U.S.C. §§ 2254(a), 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

12  375 n.7 (2000); <u>Wilson v. Corcoran</u>, 562 U.S. –, –, 131 S.Ct. 13,

13  16 (2010) (per curiam).  Petitioner claims that in the course of

14  the proceedings resulting in his conviction, he suffered

15  violations of his Constitutional rights.  Further, the challenged

16  judgment was rendered by the Kings County Superior Court (KCSC),

17  which is located within the territorial jurisdiction of this

18  Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

19       An answer was filed on behalf of Respondent Gary Sandor, who

20  at the time the petition and answer were filed was the warden of

21  the California Rehabilitation Center (CRC) at Norco, California,

22  where Petitioner has been incarcerated during the course of this

23  proceeding.  Petitioner thus named as a respondent a person who

24  has had custody of the Petitioner within the meaning of 28 U.S.C.

25  § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in

26  the District Courts (Habeas Rules).  <u>See</u>, <u>Stanley v. California</u>

27  <u>Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).

28  ///

                                2

1    Accordingly, this Court has jurisdiction over the subject

2 matter of this action and over the person of Respondent.

3    II.  Order to Substitute Respondent

4    Fed. R. Civ. P. 25(d) provides that an action does not abate

5 when a public officer who is a party in an official capacity

6 dies, resigns, or otherwise ceases to hold office while the

7 action is pending; rather, the officer's successor is

8 automatically substituted as a party.  The rule further provides

9 that a court may at any time order substitution, but the absence

10 of such an order does not affect the substitution.

11    Petitioner initially named as Respondent Gary Sandor, who

12 was the warden of CRC – where Petitioner was confined – when the

13 petition was filed.  However, the official website of the

14 California Department of Corrections and Rehabilitation (CDCR)

15 reflects that Cynthia Y. Tampkins is presently acting as warden

16 of CRC.[1]  Accordingly, it will be ordered that Cynthia Y.

17 Tampkins be substituted as Respondent.

18    III.  Procedural Summary

19    Upon his plea of guilty in case number 07CM9004 in the KCSC,

20 Petitioner was convicted of assault by a prisoner likely to

21 produce great bodily injury in violation of Cal. Pen. Code

22 § 4501.  Petitioner admitted a great bodily injury (GBI)

23 enhancement pursuant to Cal. Pen. Code § 12022.7(a).  Petitioner

24 was sentenced on January 17, 2008, to a determinate term of five

25

26    [1] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official

27 websites.  Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d

28 992, 999 (9th Cir. 2010).  The address of the official website for the CDCR is http://www.cdcr.ca.gov.

1  years in state prison.  (LD 9, 1.)[2]  Petitioner did not appeal

2  his sentence.  (Ans., doc. 14, 2.)

3      Petitioner filed four state habeas petitions.  The first

4  petition, which was filed in the Court of Appeal of the State of

5  California, Fifth Appellate District (CCA), was denied summarily.

6  (LD 1-2.)  Petitioner's next petition was filed in the KCSC and

7  was denied in a decision dated April 21, 2009.  (LD 3-4.)  His

8  third and fourth petitions were filed in the CCA and the

9  California Supreme Court (CSC), and each was denied summarily on

10  June 5, 2009, and December 2, 2009, respectively.  (LD 5-8.)

11      IV.  <u>Factual Summary</u>

12      Petitioner appeared with counsel in the KCSC on January 17,

13  2008, to enter a guilty plea.  His counsel explained on the

14  record that Petitioner would be pleading guilty to the assault

15  charge and the allegation that he had personally inflicted GBI.

16  The plea was made pursuant to an offer in which 1) the prosecutor

17  agreed to dismiss allegations of a prior prison term pursuant to

18  Cal. Pen. Code § 667.5(b); and 2) the parties stipulated to a

19  two-year mitigated term plus three years for the GBI enhancement

20  for a total of five years to run consecutively to the sentence

21  Petitioner was already serving, no penal fine, and a minimum

22  state restitution fine.  (RT 2-3; LD 1, Exh. D.)[3]  When

23  Petitioner's counsel asked Petitioner if that was his

24  understanding of the agreement, he responded affirmatively.

25  ///

26

27      [2] "LD" refers to documents lodged by Respondent in support of the answer.

28      [3] "RT" refers to the reporter's transcript of the plea and sentencing
proceedings lodged by Respondent.

The Court informed Petitioner that if he entered a guilty plea pursuant to the agreement, he would be sentenced to a five-year term consecutive to the term Petitioner was then serving; he would be ordered to pay a $20 court restitution fee and a $200 restitution fine; the court would order a separate $200 restitution fine that would be paid only if Petitioner violated parole; Petitioner would be subject to parole for three years with potential twelve-month terms for any violations and extension of the parole period to four years; and, if Petitioner were not a citizen, the result would be deportation and other limitations on immigration.  When the court asked Petitioner if he understood all those consequences of pleading guilty, Petitioner responded affirmatively.  (Id. at 3-4.)

The court explained to Petitioner the rights he was giving up if he pled guilty.  The proceedings included the following colloquy:

> [THE COURT]:  First, you have the right to a preliminary hearing at which time the District Attorney would have to present sufficient evidence to show that there is a reasonable basis to believe that you committed the crimes that you are charged with.
>
> Do you understand that right?
>
> THE DEFENDANT:  Yes, sir.
>
> . . .
>
> THE COURT:  You are giving up your right to a preliminary hearing?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Now, at a preliminary hearing or at a trial, you would have the right to see and hear and have your lawyer ask questions of the witnesses who would testify against you.
>
> Do you understand that right?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you give up that right?

THE DEFENDANT:  Yes, sir.

THE COURT:  You have the right to use the Court's power
to subpoena witnesses or things in order to require their
presence in court for your defense and that's available at
no cost to you.  You have that right at the preliminary
hearing and the trial.

Do you understand that right?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you give up that right?

THE DEFENDANT:  Yes, sir.

(Id. at 4-6.)

The prosecutor stated that the factual basis for the plea
was evidence that on or about August 12, 2007, Petitioner
assaulted fellow inmate Ronald Maefau, which resulted in GBI,
consisting of lacerations and swelling above the eye and loss of
consciousness.  Petitioner's counsel stipulated that if the
matter went to trial, the prosecutor could call witnesses to
testify to those matters.  The court then stated the following:

THE COURT:  All right.  Mr. Luafalemana, do you have
any questions you would like to ask about what's going
on in your case today?

THE DEFENDANT:  No.

THE COURT:  Do you understand everything we've gone over
in court?

THE DEFENDANT:  Yes.

THE COURT:  And other than what's been stated in open
court, have there been any promises made to you to get
you to plea (sic) guilty?

THE DEFENDANT:  No.

(Id. at 7.)

1   Petitioner then entered his plea to having committed assault
2   and to having personally inflicted GBI on the victim. (Id. at 7-
3   8.)  The court found that Petitioner's plea was intelligently,
4   freely, and voluntarily made and that there was a factual basis
5   for the plea.  The court then dismissed the charges and
6   immediately sentenced Petitioner. (Id. at 8-9.)

7       In his habeas petition filed in the CSC, Petitioner alleged
8   that the victim had suddenly hit Petitioner with an open hand,
9   breaking and knocking off Petitioner's glasses, which caused
10  Petitioner to fear the presence of additional attackers whom he
11  could not see due to poor vision.  Petitioner swung blindly in
12  the victim's direction, felt contact with the victim's head where
13  it was covered with hair, and saw the victim fall to the ground.
14  Petitioner kicked at the victim, attempting to hold him down in
15  the absence of apparent protection.  Petitioner admitted that at
16  some point he might have made contact with the victim's head.  A
17  guard then commanded Petitioner to get on the ground.  Petitioner
18  complied and could hear the victim threatening him as the pair
19  lay on the ground in handcuffs.  Petitioner and the victim walked
20  to respective holding cells.  The victim was transported to an
21  outside hospital for stitches. (LD 7, "Separate-Attached
22  Memorandum of Points and Authorities in Support of Petition for
23  Writ of Habeas Corpus" at 4-5.)  Petitioner was found guilty of
24  the lesser disciplinary violation of battery on an inmate; the
25  hearing officer observed that no evidence supported serious
26  injury. (Id. at 5.)

27      Petitioner further alleged that on the day he entered his
28  plea, he met with his counsel out of court and informed him that

7

Petitioner had been defending himself against the victim, who was known to be disruptive and sometimes violent as a mental health patient. Petitioner's counsel told him that he should plead guilty right away to maximize his chances of avoiding the eleven years he would definitely receive if the case went to trial because in counsel's opinion, the evidence irrefutably showed Petitioner's guilt. (Id. at 6.) Petitioner alleged that minutes later he pled guilty under the "duress of his own attorney asserting an opinion on Petitioner's guilt as an offer of proof of great bodily injury." (Id.) Petitioner argued that the evidence of GBI was not conclusive and constituted only the written report of the guard who stopped the fight and observed the victim apparently motionless on the ground on his stomach. Petitioner contended the evidence showed only that the victim was motionless – not that he was unconscious. (Id. at 9-10.)

Correctional Officer Hansen reported that he observed Petitioner kicking the victim in the head with his left foot while the victim was lying on his stomach on the ground and appeared motionless. Prison staff medically evaluated the victim and sent him to the Coalinga Regional Medical Center, an outside area hospital, for further evaluation and treatment. (Id. at Exh. C, 1.) Officer Hansen characterized the injury to the victim as serious. (Id.) Officer Rodriguez reported that he responded to the area, saw Officer Hansen placing Petitioner in cuffs, and found the victim lying on the ground in a pool of blood. Blood was coming from the right side of his face above his right eye. Rodriguez took photographs of the victim showing a long and wide gash over the victim's right eye with blood

coming from the eye and the nose.  (Id. at 4; Pet., doc. 1, Ex.
B.)    A crime incident report also detailed abrasions on the
victim's left elbow and active bleeding from the nose.  (Id. at
6.)

At a hearing held in prison on a disciplinary charge against
Petitioner of battery on an inmate with serious injury, the
hearing officer noted that no information was received in a
timely manner that would establish the full extent of the
victim's injuries, and the information available was insufficient
to establish serious injury.  Thus, Petitioner was found guilty
of the lesser included offense of battery on an inmate.  (Id. at
15.)

Petitioner attached to his petition the petition he had
filed in the CCA, which indicated that the victim was transported
to the hospital for stitches to his forehead. (Doc. 1, 10.)  The
guard's report was submitted to the CSC.  Correctional Officer R.
Hansen wrote that he observed Petitioner kicking the victim in
the head with his left foot while the victim was on his stomach
and appeared motionless.  Petitioner and the victim were
handcuffed and walked to separate holding areas.

Petitioner admits that blood was found on his left shoe but
characterizes the evidence as indicating only incidental blood
drops inconsistent with kicking the victim and causing the gash
on the forehead.  Petitioner asserted that he was "right legged,"
practically blind without his glasses, and took heart medication
such that Petitioner could have suffered a stoke or cardiac
arrest during the fight.  (Id. at 12-13.)  Petitioner
characterized the victim's injuries as merely being bloodied and

1  embarrassed for having used bullying tactics.  (Id. at 17.)

2      With respect to the conduct of Petitioner's counsel,

3  Petitioner asserted before the CSC that his counsel lacked a

4  working knowledge of the defense of necessity, unnecessarily

5  waived the preliminary hearing, failed to file a motion to

6  dismiss the GBI enhancement, erroneously stipulated to the

7  victim's unconsciousness, and failed to file a timely appeal.

8  (Doc. 7 at 19.)

9      V.  Standard of Decision and Scope of Review

10     Title 28 U.S.C. § 2254 provides in pertinent part:

11     (d) An application for a writ of habeas corpus on
       behalf of a person in custody pursuant to the
12     judgment of a State court shall not be granted
       with respect to any claim that was adjudicated
13     on the merits in State court proceedings unless
       the adjudication of the claim—
14
       (1) resulted in a decision that was contrary to,
15     or involved an unreasonable application of, clearly
       established Federal law, as determined by the
16     Supreme Court of the United States; or

17     (2) resulted in a decision that was based on an
       unreasonable determination of the facts in light
18     of the evidence presented in the State court
       proceeding.
19
       Clearly established federal law refers to the holdings, as
20
    opposed to the dicta, of the decisions of the Supreme Court as of
21
    the time of the relevant state court decision.  Cullen v.
22
    Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.
23
    Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S.
24
    362, 412 (2000)
25
       A state court's decision contravenes clearly established
26
    Supreme Court precedent if it reaches a legal conclusion opposite
27
    to, or substantially different from, that of the Supreme Court,
28

                                   10

1   or concludes differently on a materially indistinguishable set of

2   facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court

3   need not have cited Supreme Court precedent or have been aware of

4   it, "so long as neither the reasoning nor the result of the

5   state-court decision contradicts [it]."  Early v. Packer, 537

6   U.S. 3, 8 (2002).

7        A state court unreasonably applies clearly established

8   federal law if it either 1) correctly identifies the governing

9   rule but applies it to a new set of facts in an objectively

10  unreasonable manner, or 2) extends or fails to extend a clearly

11  established legal principle to a new context in an objectively

12  unreasonable manner.  Hernandez v. Small, 282 F.3d 1132, 1142

13  (9th Cir. 2002); see, Williams, 529 U.S. at 407.

14       An application of clearly established federal law is

15  unreasonable only if it is objectively unreasonable; an incorrect

16  or inaccurate application is not necessarily unreasonable.

17  Williams, 529 U.S. at 410.  A state court's determination that a

18  claim lacks merit precludes federal habeas relief as long

19  fairminded jurists could disagree on the correctness of the state

20  court's decision.  Harrington v. Richter, 562 U.S. -, 131 S.Ct.

21  770, 786 (2011).

22       Even a strong case for relief does not render the state

23  court's conclusions unreasonable.  Id.  To obtain federal habeas

24  relief, a state prisoner must show that the state court's ruling

25  on a claim was "so lacking in justification that there was an

26  error well understood and comprehended in existing law beyond any

27  possibility for fairminded disagreement."  Id. at 786-87.  The

28  standards set by § 2254(d) are "highly deferential standard[s]

1  for evaluating state-court rulings" which require that state
2  court decisions be given the benefit of the doubt, and the
3  Petitioner bear the burden of proof.  Cullen v. Pinholster, 131
4  S. Ct. at 1398.  Further, habeas relief is not appropriate unless
5  each ground supporting the state court decision is examined and
6  found to be unreasonable under the AEDPA.  Wetzel v. Lambert, -
7  -U.S.--, 132 S.Ct. 1195, 1199 (2012).

8       In assessing under section 2254(d)(1) whether the state
9  court's legal conclusion was contrary to or an unreasonable
10 application of federal law, "review... is limited to the record
11 that was before the state court that adjudicated the
12 claim on the merits."  Cullen v. Pinholster, 131 S. Ct. at 1398.
13 Evidence introduced in federal court has no bearing on review
14 pursuant to § 2254(d)(1).  Id. at 1400.  Further, 28 U.S.C.
15 § 2254(e)(1) provides that in a habeas proceeding brought by a
16 person in custody pursuant to a judgment of a state court, a
17 determination of a factual issue made by a state court shall be
18 presumed to be correct; the petitioner has the burden of
19 producing clear and convincing evidence to rebut the presumption
20 of correctness.  A state court decision on the merits and based
21 on a factual determination will not be overturned on factual
22 grounds unless it was objectively unreasonable in light of the
23 evidence presented in the state proceedings.  Miller-El v.
24 Cockrell, 537 U.S. 322, 340 (2003).

25      The last reasoned decision must be identified in order to
26 analyze the state court decision pursuant to 28 U.S.C. §
27 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th Cir.
28 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir. 2003).

1   Here, the KCSC's decision was the last reasoned decision in which

2   the state court adjudicated Petitioner's claims on the merits.

3   Where there has been one reasoned state judgment rejecting a

4   federal claim, later unexplained orders upholding that judgment

5   or rejecting the same claim are presumed to rest upon the same

6   ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This

7   Court will thus "look through" the unexplained decision of the

8   CCA and the CSC to the KCSC's last reasoned decision as the

9   relevant state-court determination.  Id. at 803-04; Taylor v.

10  Maddox, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

11       VI.  Ineffective Assistance of Counsel

12       Petitioner argues that he was denied his right to the

13  effective assistance of counsel at trial by counsel's failure to

14  represent him properly with respect to the GBI enhancement.

15  Petitioner alleges that he claimed the enhancement was not true,

16  but his counsel did not respond other than to enter the guilty

17  plea.  (Pet. at 4, 12.)  Petitioner declares that at his pretrial

18  hearing, he told counsel he did not kick the victim until he was

19  knocked out and Petitioner could hear the victim talking while

20  they were on the ground handcuffed; Petitioner pled guilty only

21  because his counsel told him to do it or get eleven years in

22  prison.  (Id. at 81-82.)  Petitioner further contends that

23  counsel failed to advise him of his appeal rights, and he never

24  received any information or advice regarding his claim that

25  because he did not cause GBI to his victim, the evidence was

26  insufficient to sustain the enhancement.  (Id. at 9.)

27       Respondent notes Petitioner's two-part claim that counsel

28  should have conducted further factual investigation of the crime

13

1   and that counsel should have perfected direct appeal procedures.

2   (Ans., doc. 14, 9:12-16.)   Respondent argues, however, that

3   Petitioner's claim of inadequate investigation is barred by the

4   decision in <u>Tollett v. Henderson</u>, 411 U.S. 258, (1973).

5        In <u>Tollett</u>, the Court held that petitioner's guilty plea to

6   first degree murder, based on the advice of counsel, foreclosed

7   any independent inquiry in federal habeas corpus proceedings into

8   the merits of a claim of unconstitutional racial discrimination

9   in the selection of the grand jury that returned the indictment

10  unless the petitioner demonstrated that the advice regarding the

11  plea was not within the range of competence demanded of attorneys

12  in criminal cases.   <u>Id.</u> at 266-67.   The Court stated the

13  following:

> We hold that after a criminal defendant pleads guilty,
> on the advice of counsel, he is not automatically
> entitled to federal collateral relief on proof that the
> indicting grand jury was unconstitutionally selected.
> The focus of federal habeas inquiry is the nature of
> the advice and the voluntariness of the plea, not the
> existence as such of an antecedent constitutional
> infirmity. A state prisoner must, of course, prove that
> some constitutional infirmity occurred in the
> proceedings. But the inquiry does not end at that
> point, as the Court of Appeals apparently thought. If a
> prisoner pleads guilty on the advice of counsel, he
> must demonstrate that the advice was not 'within the
> range of competence demanded of attorneys in criminal
> cases,' McMann v. Richardson, supra, 397 U.S. at 771,
> 90 S.Ct. at 1449. Counsel's failure to evaluate
> properly facts giving rise to a constitutional claim,
> or his failure properly to inform himself of facts that
> would have shown the existence of a constitutional
> claim, might in particular fact situations meet this
> standard of proof. Thus, while claims of prior
> constitutional deprivation may play a part in
> evaluating the advice rendered by counsel, they are not
> themselves independent grounds for federal collateral
> relief.
>
> We thus reaffirm the principle recognized in the Brady
> trilogy: a guilty plea represents a break in the chain
> of events which has preceded it in the criminal

14

process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, McMann, supra, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Id. at 266-67.  Thus, although Petitioner generally may not challenge defects in the proceedings that led to his plea, he may contend that counsel's advice to plead guilty was outside the range of competence demanded of attorneys in criminal cases.  Id. at 268.

### A.   The State Court Decision

In his habeas petition filed in the KCSC, Petitioner argued that counsel failed to undertake a competent investigation into the facts of Petitioner's case and the lesser included offense of simple assault, urged Petitioner to enter a guilty plea before the facts of GBI were proven beyond a reasonable doubt, improperly and incorrectly stipulated to a fact of the victim's unconsciousness, and failed to file a timely notice of appeal. (LD 4, 1.)  The KCSC's decision concerning Petitioner's claim of ineffective assistance of counsel with respect to the plea was as

follows:

> In regards to whether Mr. Stover failed to conduct sufficient investigation into the great bodily injury enhancement, the court notes that Petitioner's voluntary plea was entered only two months following the filing of the Complaint.  As part of his plea, Petitioner waived the right to require that the District Attorney present sufficient evidence to support the charge, trial by jury, and the right to allow Mr. Stover to question and/or subpoena witnesses.  (Transcript, 4:22-5:6:8.) Having received a substantial benefit from his plea agreement, Petitioner cannot now be heard to complain about the stipulated plea and sentence to which he voluntarily agreed.

(Id. at 2.)

### B.  Legal Standards

The Supreme Court has described the high bar presented by § 2254(d)(1) for prevailing on a claim of ineffective assistance of counsel:

> "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].
>
> "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...
>
> " 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ---- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under de novo

review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id., at 689 [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles, 556 U.S., at ----, 129 S.Ct., at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."

Premo v. Moore, - U.S. -, 131 S.Ct. 733, 739-40 (2011) (quoting

Harrington v. Richter, - U.S. -, 131 S.Ct. 770 (2011)).

The law governing claims concerning ineffective assistance of counsel is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Premo v. Moore, –U.S. –, 131 S.Ct. 733, 737-38 (2011); Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998). The negotiation of a plea bargain is a critical stage of the proceedings for purposes of the Sixth Amendment right to counsel. Padilla v. Kentucky, 559 U.S. -, 130 S.Ct. 1473, 1486 (2010). Hill v. Lockhart, 474 U. S.

52, 57 (1985) established that <u>Strickland</u>'s two-part test governs claims of ineffective assistance in the plea bargain context. <u>Missouri v. Frye</u>, - U.S. -, 132 S.Ct. 1399, 1405 (2012).

        C.  <u>Analysis</u>

     Petitioner has not established what counsel knew or did not know at the time Petitioner was advised to enter the plea. Petitioner asserts he told his counsel he could hear the victim speaking when they were both handcuffed on the floor, and reasons that counsel, therefore, knew that the victim had not been unconscious.  However, it is possible that the victim had been unconscious earlier when he had been kicked by Petitioner and then regained consciousness after he had been handcuffed.

     Further, regardless of the victim's unconsciousness, the facts alleged by Petitioner do not preclude a factual finding that Petitioner had inflicted GBI.  "Great bodily injury" within the meaning of § 12022.7 means a significant or substantial physical injury.  Cal. Pen. Code § 12022.7(f).  Under the general standard of "significant or substantial physical injury" set forth in § 12022.7, the injury must be beyond that inherent in the offense, but need not be so grave as to cause the victim permanent, prolonged, or protracted disfigurement, impairment, or loss of bodily function.  It is for the trier of fact in most situations to make the determination because a fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description.  <u>People v. Escobar</u>, 3 Cal.4th 740, 750, 752 (1992) (finding GBI where a rape victim suffered bloody knees, vaginal soreness, abrasions, and a painful neck).  Pertinent factors include the severity of the

physical injury, the resulting pain, and the medical care required to treat or repair the injury. <u>People v. Cross</u>, 45 Cal.4th 58, 65 (2008). Neither medical complications nor the use of force is necessary to support a finding of great bodily injury. <u>Id.</u> at 66. Abrasions, lacerations, and bruising may constitute great bodily injury. <u>People v. Washington</u>, 210 Cal.App.4th 1042, 1047 (2012).

Here, in addition to having been kicked in the head, the victim suffered what appeared to be a deep and extensive laceration over the entire area above his right eye and down the bridge of the nose on the right side. According to photographs taken after the assault, the injury was so severe that the victim was bleeding not only from his eye, but also through his nose. (Pet., Ex. B.) From the correctional officers' observations of the motionless victim and the pool of blood emanating from the victim, it may reasonably be inferred that the blow was sufficient to render the victim motionless if not unconscious. The victim had additional abrasions and was sent to a hospital for stitches.

Because the victim was kicked, suffered an extensive wound in the immediate area of the nose and eye that bled profusely, and needed hospitalization to suture the wound, a reasonable trier of fact could find that even if the victim was not rendered unconscious by the attack, he nonetheless suffered GBI. As such, Petitioner cannot show that counsel's advice that the evidence would support a finding of GBI was objectively unreasonable or substandard. It also precludes a demonstration of prejudice because Petitioner has not shown that absent counsel's advice,

1    and assuming that Petitioner went to trial, it was reasonably
2    probable that the result of the proceeding would have been
3    different.  Indeed, had Petitioner gone to trial and been
4    convicted, he would have risked further enhancement of his
5    sentence pursuant to Cal. Pen. Code § 667.5, an allegation that
6    had been dismissed pursuant to the plea bargain.  As such,
7    Petitioner has not shown that in advising Petitioner to enter the
8    plea, counsel was ineffective.

9         Moreover, Petitioner has failed to demonstrate that
10   counsel's advice to enter the plea was unreasonable with respect
11   to the sufficiency of the evidence to establish GBI and was
12   prejudicial.  Accordingly, Petitioner has failed to demonstrate
13   that counsel's failure to process an appeal on that issue would
14   have been ineffective assistance.

15        This reasoning is consistent with that of the KCSC, which
16   concluded that Petitioner's plea was voluntary, and that any
17   error by counsel did not warrant reversal because the error had
18   no effect upon the judgment.  (LD 4 at 2.)  As Respondent notes,
19   deference to a state court's prejudice determination is
20   significant because of the uncertainty inherent in plea
21   negotiations.  Premo v. Moore, 131 S.Ct. at 737.

22        The Court concludes that Petitioner has not shown that
23   counsel's advice to enter the plea was substandard or constituted
24   ineffective assistance of counsel.  Neither this Court nor the
25   state courts are bound by the mere fact that evidence that may or
26   may not have been the same as the evidence known to Petitioner's
27   counsel was found not to satisfy the standard for a serious
28   bodily injury finding in a prison disciplinary proceeding.

Further, a defendant's sworn statements of voluntariness made at a plea hearing carry a strong presumption of veracity.  <u>See</u>, <u>Blacklege v. Allison</u>, 431 U.S. 63, 73-74 (1974).  Here, the record of the plea colloquy demonstrates that Petitioner was aware of the rights he was waiving and the consequences of his plea.

In sum, Petitioner has not shown that his plea was involuntary or unintelligent or that counsel was ineffective with respect to the plea.  Accordingly, he has failed to establish that the state court decision was contrary to, or an unreasonable application of, clearly established federal law.

VII.   <u>Insufficiency of the Evidence of Great Bodily Injury</u>

Petitioner argues that there was insufficient evidence of GBI because unconsciousness does not constitute GBI.

The last state court decision reveals that by pleading guilty to the enhancement, Petitioner admitted the elements of the enhancement and thereby waived any issues concerning the sufficiency of the evidence.  (Op. of the KCSC, LD 4 at 1.)  The state court decision was not contrary to, or an unreasonable application of, clearly established federal law within the meaning of 28 U.S.C. § 2254(d)(1).

The plea transcript establishes that Petitioner voluntarily and intelligently admitted he had personally inflicted GBI upon the victim.  A plea of guilty is an admission to all elements of a formal criminal charge.  <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969).  As previously noted, an admission in open court of guilt of a charge precludes raising independent claims relating to the deprivation of constitutional rights that

21

1   occurred prior to the entry of the guilty plea.  Tollett, 411
2   U.S. at 267.

3       In sum, Petitioner has failed to show that the state court
4   decision resulted in a decision that was contrary to, or an
5   unreasonable application of, clearly established federal law.
6   Accordingly, the petition for writ of habeas corpus will be
7   denied.

8       VIII.  Certificate of Appealability

9       Unless a circuit justice or judge issues a certificate of
10  appealability, an appeal may not be taken to the Court of Appeals
11  from the final order in a habeas proceeding in which the
12  detention complained of arises out of process issued by a state
13  court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537
14  U.S. 322, 336 (2003).  A certificate of appealability may issue
15  only if the applicant makes a substantial showing of the denial
16  of a constitutional right.  § 2253(c)(2).  Under this standard, a
17  petitioner must show that reasonable jurists could debate whether
18  the petition should have been resolved in a different manner or
19  that the issues presented were adequate to deserve encouragement
20  to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336
21  (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A
22  certificate should issue if the Petitioner shows that jurists of
23  reason would find it debatable whether the petition states a
24  valid claim of the denial of a constitutional right or that
25  jurists of reason would find it debatable whether the district
26  court was correct in any procedural ruling.  Slack v. McDaniel,
27  529 U.S. 473, 483-84 (2000).
28  ///

A court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. An applicant must show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary to show that the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, the Court will decline to issue a certificate of appealability.

IX.  Disposition

Accordingly, it is ORDERED that:

1) Cynthia Y. Tampkins, Warden, is SUBSTITUTED as Respondent; and

2) The petition for writ of habeas corpus is DENIED; and

3) The Clerk is DIRECTED to enter judgment for Respondent; and

4) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:    January 16, 2013                    /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE